STATE of Missouri, Respondent,

v.

Leslie SHEARD, Appellant.

No. 44459.

Supreme Court of Missouri.

Division No. 2.

March 14, 1955.

See also 276 S.W.2d 196.

192

John P. Haley, Jr., Austin B. Speers, Kansas City, for appellant.

John M. Dalton, Atty. Gen., Grover C. Huston, Asst. Atty. Gen., for respondent.

STOCKARD, Commissioner.

On June 2, 1953, in the Circuit Court of Jackson County, Missouri, Leslie Sheard was convicted of rape. The jury imposed a sentence of thirty-five years imprisonment in the State Penitentiary, but pursuant to Section 546.430 RSMo 1949, V.A.M.S. and Supreme Court Rule 27.04, 42 V.A.M.S., the trial judge reduced the sentence to twenty-five years imprisonment.

No brief has been filed on behalf of appellant so we consider the matters preserved for review by the six assignments of error in the motion for new trial.

It has been a mandatory requirement of statute, Section 547.030 RSMo 1949, V.A.M.S., and now of Supreme Court Rule 27.20 that the motion for new trial "must set forth in detail and with particularity" the specific grounds or causes therefor. State v. Gaddy, Mo.Sup., 261 S.W.2d 65 [4]; State v. Burks, Mo.Sup., 257 S.W.2d 919 [1]. This Court has repeatedly held to be insufficient to preserve anything for review such general statements in a motion for new trial as, "The verdict is against the law and the evidence", State v. Gaddy, supra; State v. McHarness, Mo.Sup., 255 S.W.2d 826 [12]; State v. Politte, Mo.Sup., 249 S.W.2d 366 [2]; State v. Johnson, Mo.Sup., 248 S.W.2d 654 [1], "The verdict is against the weight of the evidence", State v. Rohman, Mo.Sup., 261 S.W.2d 69 [2]; State v. Burks, supra [1]; State v. McHarness, supra, and "The prosecuting attorney misquoted the evidence in his final argument", State v. Eison, Mo.Sup., 271 S.W.2d 571 [4]; State v. Farris, Mo.Sup., 243 S.W.2d 983 [10]. The above three assignments of error, quoted in their entirety from the motion for new trial in this case, preserved nothing for review.

The next assignment of error was that "There was no proof that defendant participated in the rape or was a party to the rape." This necessitates a statement of the evidence.

After attending a picture show in Kansas City, Missouri, on the evening of February 14, 1953, the prosecutrix, the mother of two grown sons, went to a cafe three or four blocks from her apartment in the 2900 block of Forest Street, Kansas City, Missouri. At the cafe she met Willard Beckett, a friend whom she had known for some time. Shortly after midnight while she was being escorted to her apartment by Mr. Beckett, the appellant, his brother Levi Sheard, and Lloyd Thompson assaulted them. Mr. Beckett was knocked unconscious. The prosecutrix was struck in the eye and knocked down. Her assailants took her watch and purse, and then took her coat and placed it over her head. While she was on the ground she "peeked" from under the coat and the appellant hit her on the back of her

head and told her to look the other way and that "he meant business." The prosecutrix was then taken across the street with the coat still over her head, and she was placed in an automobile. She was scared, and when she asked where they were going to take her she was told "not very far," and that if she would do as told she would not be hurt. She was in the car about thirty minutes during which time there were three separate acts of sexual intercourse with her. Actual penetration was had each time. The car was stopped twice, and after each act of intercourse the man in the back seat with her exchanged seats with one of the men in the front seat. During the time she was in the car the coat was kept over her head and she did not know if each of the three men had sexual intercourse with her or if one engaged in the act more than once. The prosecutrix was released at Twenty-sixth and Woodland Streets in Kansas City, Missouri, and she went immediately to a neighboring residence, reported what had occurred, and the police were called. She looked as though "she had had quite a struggle," her stockings were torn, she had a mark on the side of her face, her arms were red and marked, her eye was bruised and she had abrasions on her forehead. She was immediately taken to a hospital and an examination disclosed seminal fluid and male spermatozoa in her vagina. Later she was examined at a clinic and was told that she "had been given a case of gonorrhea."

During the afternoon of February 15, 1953, the appellant and his two companions were arrested near Russellville, Arkansas. In their car were found two handkerchiefs and a perfume case which had been in the purse of the prosecutrix at the time of the assault. Also an overcoat and billfold, which were the property of Willard Beckett, were in their car. Appellant admitted orally to a police officer on February 21, 1953, that the prosecutrix "was raped in the car" and that he was present, but he denied that he had sexual intercourse with her. The prosecutrix identified the appellant, and also Levi Sheard and Lloyd Thompson, in a police line-up, and positive-

ly identified the appellant at the trial as one of her attackers.

On February 22, 1953, appellant made a written statement to police officers in which he admitted substantially all of the facts related by the prosecutrix pertaining to him and his companions, except he stated that Levi Sheard struck the prosecutrix. He denied that he struck her or had sexual intercourse with her. He admitted in his statement that he was with Levi Sheard and Lloyd Thompson at the time of the assault, that he knew the prosecutrix was taken to the car for the purpose of having sexual intercourse with her, that he was the driver of the car when Lloyd Thompson had sexual intercourse with her in the back seat of the car, and that at the time he knew what was occurring. He also stated that when the car was stopped Levi Sheard changed places with Lloyd Thompson in the back seat, but he did not know if he had sexual intercourse with her. The appellant presented no evidence.

■ This assignment of error is a challenge against the sufficiency of the evidence, and in determining this we consider as true the evidence favorable to the State and the favorable inferences reasonably to be drawn therefrom. State v. Harmon, Mo.Sup., 243 S.W.2d 326 [7]; State v. Swindell, 357 Mo. 1090, 212 S.W.2d 415 [2]. It is admitted in the assignment that a rape of the prosecutrix did occur, and the evidence was clearly sufficient for a jury to find that prosecutrix was forcibly ravished. She was knocked to the ground by appellant or one of his companions and was then struck on the head for doing nothing more than "peeking" from under the coat. The three men then took her to the car and they warned her that if she would do as told she would not be hurt. When she was hit for peeking from under the coat she experienced what could happen to her if she did not do what she was told. She had also seen the three men knock her companion unconscious. She had good reason to believe that these three men would probably not be mild in their retaliatory action

against her if she did not do as told. Her physical appearance immediately after she was released from the car clearly indicated that the treatment she received at the hands of appellant and his companions had been rather severe, and that even after the threats of bodily harm her ravishment was not accomplished without "quite a struggle."

In State v. Burlison, 315 Mo. 232, 285 S.W. 712, 715 [2], this Court held that where two "persons are jointly charged and the proof shows that they acted together, aiding and assisting one another in the perpetration of successive rapes, or that the one committed the act and the other did not, but such other stood by and aided and assisted the one in the commission of such act, they may be jointly charged with the commission of such act and both may be convicted under such charge." It has also been held that, " 'A party may be charged with doing the act himself, and be held liable under such charge, for being present, aiding, and assisting another in doing it.' " State v. Sykes, 191 Mo. 62, 89 S.W. 851, 855 [9]. The general rule is that, "all persons present aiding and abetting another in the commission of rape are guilty as principals and punishable equally with the actual perpetrator of the crime." 75 C.J.S., Rape, § 18, page 483. See also 44 Am.Jur., Rape § 33, p. 921.

Appellant and his two companions were charged in the same information. His companions asked for a severance and appellant was tried separately. We need not decide if there was substantial evidence that appellant was one of those who actually had sexual intercourse with prosecutrix in the back seat of the car. There was substantial evidence that one or more of the three men did forcibly ravish the prosecutrix and that at the time they were all, including appellant, acting together for a common purpose. In an Illinois case, six young men enticed a girl into their car on the pretext of taking her to her hotel. Four of the men had sexual intercourse with her in the back seat of the car forcibly and against her will. The other two, one of which was the driver of the car, did not actually engage in an act of intercourse with the girl, but they were in the car and knew what was going on. The driver of the car was found guilty of rape and in upholding this conviction the Supreme Court of Illinois held that, "It is clear that the plaintiff in error, Alex Marx, who was driving the automobile, did not in any way take part actively in the holding of the prosecutrix at the time when she charges the acts were being forcibly committed, but the evidence shows without contradiction, and he himself admits, that he drove the car several miles out of the way in Chicago while going from the cabaret to the hotel at Wabash avenue and Eighteenth street. His acts in this regard tend to show that he was actually encouraging and approving what was being done in the car." People v. Marx, 291 Ill. 40, 125 N.E. 719, 722 [7]. The evidence in this case, if believed by the jury, clearly justified a finding that appellant aided and abetted the others in a forcible ravishment of the prosecutrix, and that the appellant "participated in or was a party to the rape." The jury so found under appropriate instructions. The finding is supported by substantial evidence. This assignment of error is without merit.

Another assignment of error was that the trial court erred in failing to discharge the jury and declare a mistrial on three separate occasions for inflammatory and prejudicial remarks by the prosecuting attorney in his final argument. There were in fact only two such requests made. The first occurred when the prosecuting attorney said that the prosecutrix was the mother of two children, one of which was in Korea, and that this son had been repaid by the rape of his mother and by her having been given gonorrhea. That the prosecutrix had a son in Korea and that she had been "given a case of gonorrhea" was known to the jury. Evidence to this effect had been admitted without objection. The trial judge overruled the request for a mistrial and immediately stated to the jury that the fact that the prosecutrix had a son in Korea had nothing to do with the issues in the case. The next request for a mistrial occurred when the prosecuting at-

torney said, "in view of the beating of this woman, in view of the fact there were three colored men, three of them * * *." At this point the defense counsel interrupted and stated: "I object to the reference of colored men and a white woman. He is only saying it to be prejudicial." In the previous argument no reference had been made to the fact that the prosecutrix was a white woman. The prosecutrix and the appellant were in the court room in the presence of the jury and the record is replete with evidence that appellant and his two companions were colored. The jury was not told anything they did not already know from the evidence properly admitted. The reference to the appellant was not made in derogatory terms. The trial court immediately told the jury that race did not have anything to do with the case and overruled the request for a mistrial.

The remarks of the prosecuting attorney in each instance were ill advised, but in each case the trial court immediately made statements to the jury designed to remove any prejudicial or inflammatory effect. The mere fact that the prosecuting attorney made some statement that called for an admonition from the trial court that the substance of the statement had no bearing on the issues in the case does not of itself justify the declaration of a mistrial. Whether or not a mistrial in a criminal prosecution should be granted because of the argument of the prosecutor is a matter in which the trial court has considerable discretion. State v. Eison, supra [2]; State v. Shilkett, 356 Mo. 1081, 204 S.W.2d 920 [12]; State v. Wynne, 353 Mo. 276, 182 S.W.2d 294 [1]; State v. Lakin, Mo.Sup., 177 S.W.2d 500 [6]; State v. Demaggio, Mo.Sup., 152 S.W.2d 71 [3]. It is within the discretion of the trial court whether a mistrial should be declared for alleged prejudicial remarks which tend to inflame the minds of the jurors. State v. Frazer, 363 Mo. 77, 248 S.W.2d 645 [5]. The trial judge may properly refuse to grant a request for a mistrial when he is satisfied that no injustice has resulted, or will result, from the occurrences complained of. The trial court had the opportunity to judge the effect of the remarks on the jury, and he exercised his right to take such steps as he believed necessary or advisable under the circumstances. In view of the statements themselves and the action taken by the trial court, we cannot say that the trial court abused its discretion in either instance in not declaring a mistrial.

The remaining assignment of error was that the verdict is excessive. The jury assessed the punishment at thirty-five years imprisonment but the trial court reduced this sentence to twenty-five years. The authorized punishment for the crime of rape is death or imprisonment in the penitentiary for not less than two years. Section 559.260 RSMo 1949, V.A.M.S. The punishment assessed by the jury, in and of itself, does not demonstrate passion and prejudice. The thirty-five year term assessed by the jury was well within the limits of punishment provided by the Legislature for rape. It was the jury's function primarily to assess the punishment within the statutory limits, subject to the trial court's discretionary power to reduce the punishment so assessed. State v. McHarness, supra [4]. In the light of the evidence herein reviewed, we cannot say that the jury demonstrated passion or prejudice against the appellant in assessing the punishment it did, nor can we say that the trial court abused its discretion in failing to reduce the punishment to a shorter term.

We have also reviewed those record matters which we review irrespective of a motion for new trial and no error prejudicial to the appellant is found. The information properly charged the offense of rape. No arraignment or plea are shown in the record, but appellant was tried as if he had been arraigned and had entered a plea of not guilty. The failure of the record to show arraignment and the entry of a plea is not reversible error. Supreme Court Rule No. 25.04.

Appellant was present throughout the trial. The verdict was in proper form and was responsive to the information. Allocution was accorded appellant and the judg-

ment and sentence conformed to the requirements of law.

The judgment is affirmed and it is directed that the sentence pronounced be executed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

ELLISON, P. J., LEEDY, J., and BROADDUS, Special Judge, concur.