**STATE of Missouri, Plaintiff-Respondent,**

v.

**Charles PATTON, Defendant-Appellant.**

No. 7528.

Springfield Court of Appeals.

Missouri.

Dec. 11, 1956.

**20**

Ronald J. Fuller, Rolla, for defendant-appellant.

Jay White, Rolla, for plaintiff-respondent.

RUARK, Judge.

Appellant was charged with and convicted of unlawfully supplying intoxicating liquor, to-wit, beer, to three boys, all under the age of twenty-one years. First assigned as error are the rulings of the trial court in denial of defendant's motions for judgment of acquittal at the close of the state's case and at the close of all the evidence on the ground there was no evidence that defendant supplied the minors with any beverage (1) containing the percentage of alcohol which would establish the beverage to be intoxicating liquor under the statute; (2) containing in excess of 3.2 per cent of alcohol by weight. One of the boys, Georgie Hodge, testified that at the time of the occurrence he was fifteen years old, that he, his brother, Munroe Hodge, and Vernon Smith got in a truck with the appellant and spent from shortly after eight-thirty p. m. until midnight with him. That appellant first stopped at a beer place and bought some beer and, later, stopped at another place and bought (what was called) Red Cap ale. This was apparently in cans. That each of the boys drank of the substances so purchased. Georgie consumed that night a total of about three cans. The witness said that he had drunk beer before when his father had given it to him. He did not know the alcoholic content of the substance he drank but said that it made him dizzy, he "didn't feel so good," he couldn't "walk right" and fell down in a ditch. James Munroe Hodge (age nineteen), testified that defendant first went into the Eagles Club and got three or four cans of Budweiser, opened it and each of the boys drank from it. After driving around some he stopped at another place and bought a "handy-pack" (six cans) of what the witness said was labeled "Red Cap Ale." Later on the Red Cap cans were opened and the boys drank of

it. This witness said he drank a total of three or four cans during the evening. That he hadn't had anything else to drink. That the effect upon him was that "I was pretty tipsy going up the graveyard hill. I was feeling pretty good, and my younger brother fell a couple of times, and I was pretty staggery," also that he felt unsteady and dizzy. This witness testified that he knew beer because he had drunk it before with his father. That he didn't know whether the Red Cap was beer or ale, and again, that he knew it was beer that he drank because of the way it tasted, and "I don't know what the percentage was on it or nothing about it, but I was pretty tipsy." The defendant denied furnishing the boys anything to drink.

■ The courts may not apply their own tests in order to determine what malt beverages may not be supplied to minors because they are intoxicating. The General Assembly of Missouri has preempted this field (that of declaring what is intoxicating and what is not intoxicating) and by separate statutes has divided malt beverages into three classifications. Chapter 311 RSMo 1949, V.A.M.S., is the Liquor Control Law, and (A) in Section 311.020 intoxicating beer (and other liquor beverages) is defined as that which contains *in excess of 3.2 per cent of alcohol by weight*. It is under this chapter that the charge against appellant is laid. Section 311.310 provides that any person, except a parent or guardian, who shall give or supply a person under twenty-one years with intoxicating liquor shall be guilty of a misdemeanor. Chapter 312 deals with "nonintoxicating" beer. (B) Under Section 312.010 et seq., such is defined as any beer which has *an alcoholic content of more than one-half of one per cent by volume and not exceeding 3.2 per cent by weight*. (C) Section 312.020(2) expressly exempts all beverages containing *less than one-half of one per cent of alcohol by volume.*

■ Where the statute makes the character of beverages sold the substance of the offense, such character must be proved by the state. State v. Kroeger (banc), 321 Mo. 1063, 13 S.W.2d 1067; State v. McMillen, 327 Mo. 1189, 39 S.W.2d 559. There was no evidence in this case as to the alcoholic content of the substances given to the boys. So far as the record shows it could have been that of intoxicating liquor as charged in the information, or nonintoxicating beer as defined by the statute, or that of exempted beer, which latter two would fail to fit the offense charged. In prosecutions for violations under any of the statutes mentioned above, it must be proved beyond a reasonable doubt that the alcoholic content of the beer concerning which appellant is charged falls within the range of alcoholic content specified in such statute. This has been settled by State v. Maupin, Mo.App., 268 S.W.2d 39, and State v. Henry, Mo.App., 254 S.W.2d 307.

Respondent urges that evidence that the boys were affected by the beverage, that one of them became dizzy, staggered and had difficulty in walking, and another of them was "tipsy" and "staggery," is sufficient to prove that the beverage was, in point of fact, intoxicating. But the legislature has declared the kind of "intoxicating liquor" which is required to make the appellant guilty of the crime with which he is charged. It must be liquor which contained in excess of 3.2 per cent of alcohol by weight. If the beverage given to the boys contained less than 3.2 per cent of alcohol by weight it was not the "intoxicating liquor" concerning which the present charge is made, but, on the other hand, it is nonintoxicating beer as defined by Section 312.010. When a statute declares that intoxicating liquors are those containing a certain percentage of alcohol, that statutory test is conclusive upon the courts. 48 C.J.S., Intoxicating Liquors, § 1, p. 135; 30 Am.Jur., Intoxicating Liquors, sec. 6, p. 256; sec. 29, p. 271; sec. 55, p. 288; see 11 A.L.R. 1233, annotation; 4 A.L.R. 1135, annotation 1140; 91 A.L.R. 515, annotation. True, defendant might have been guilty of giving the boys a beverage or liquor having a different

**22**

character under the statute, such as "nonintoxicating beer," which to them was intoxicating in fact, but if so that is another crime under another statute which he is not called upon to defend against in this case.

We can judicially infer that beer (and possibly ale) is a beverage, usually made by fermentation, but we cannot take judicial notice that any beverage called "beer" is intoxicating. State v. Malone, 238 Mo.App. 939, 192 S.W.2d 68. Nor can we judicially declare that inebriation which might result to one person from drinking beer which had an alcoholic content of 3.201 per cent and is therefore "intoxicating beer" under the statute, might not come to another from drinking beer with an alcoholic content of 3.199 per cent and therefore "nonintoxicating" under the statute. In State v. Raines, 333 Mo. 538, 62 S.W.2d 727, loc. cit. 728, the court quotes Lamm, C. J., in Donaldson v. Donaldson, 249 Mo. 288, 155 S.W. 791, 794, "To theorize on the effect of the use of whisky on the will power of men generally depends too much on the extent of the use; the individual man (and, it may be, the quality of the liquor) to be of value in deciding this case. The case cannot be permitted to break on a philosophical view of some moot point in physiology or psychology." In State v. Hanson, 234 Mo. 583, 137 S.W. 968, loc. cit. 969, it was said, "The fact that some people would become intoxicated by the use of a very small quantity of alcoholic stimulants; while others could imbibe an indefinite quantity of the same beverage and remain sober, made it necessary to have some fixed rule for determining what were intoxicating liquors."

The defendant's motions for judgment of acquittal should have been sustained. Since this disposes of the case it is unnecessary to consider appellant's remaining assignments of error. The judgment of conviction is reversed and the defendant is ordered discharged.

McDOWELL, P. J., and STONE, J., concur.