STATE of Missouri, Respondent,

v.

Edward EDMONSON, Appellant.

No. 46229.

Supreme Court of Missouri,
Division No. 2.

Feb. 10, 1958.

Clarence E. Godfrey, St. Louis, for appellant.

John M. Dalton, Atty. Gen., Hugh P. Williamson, Asst. Atty. Gen., for respondent.

STOCKARD, Commissioner.

Edward Edmonson, appellant herein, was charged with the offense of tampering, driving and operating an automobile without the consent of the owner. See Sections 560.175 and 560.180 (all references are to RSMo 1949, V.A.M.S.). The information also contained the necessary averments pursuant to Section 556.280, known as the habitual criminal act, to the effect that he had previously been convicted of six separate felonies. The jury found appellant guilty of the offense charged, and also that he had previously been convicted of a felony, and it assessed his punishment at five years imprisonment in the state penitentiary. He has appealed from the ensuing judgment, but he has filed no brief in this court. Therefore, we shall look to his motion for new trial for his assignments of error.

Appellant contends that the trial court erred in overruling his motions for judgment of acquittal made at the end of the state's evidence and again at the close of the entire case. Appellant offered evidence in his own behalf, and for that reason the error, if any, in overruling the motion made at the end of the state's evidence was waived. State v. Scott, Mo.Sup., 299 S.W.2d 526 [1]. The effect of the assignment of error that the trial court erred in overruling the motion which was made at the end of the entire case was that appellant contended that the state did not make a submissible case for the jury. In determining this question we consider as true the evidence favorable to the state, and we take into consideration the inferences favorable to the state reasonably to be drawn therefrom. State v. Sheard, Mo.Sup., 276 S.W. 2d 191 [3].

On the evening of August 23, 1956, Eugene Walker parked his 1954 green Pontiac sedan on a public street in the City of St. Louis while he attended a night baseball game. Although he had locked his automobile, when he returned after the game it was missing. He had given no one authority or permission to use it. On October 22, 1956, appellant was involved in a minor accident at 16th and Cass streets in the City of St. Louis while operating a green Pontiac sedan. At the time of this accident he was alone in the automobile. Mr. Oscar W. Moehle, the operator of the other car, asked appellant to drive to a garage to obtain an estimate of the damage to the Moehle automobile, but on the way to the garage appellant turned off on Carr street and Mr. Moehle did not try to follow him. Later that day, while appellant was alone and was operating a 1954 green Pontiac sedan, he was involved in a second accident, this time with a United States mail truck, at the intersection of 20th and Carr streets. The 1954 green Pontiac sedan was positive-

ly identified as the automobile belonging to Eugene Walker.

Appellant testified in his own behalf, and his version was as follows: He operated an automobile repair shop in St. Louis, and on October 22, 1956, a man by the name of Baker brought a 1954 green Pontiac sedan to him for repairs and gave him a telephone number to call when the automobile was ready. Appellant replaced the fuel pump, cleaned the spark plugs and checked the battery, and he then called Baker to tell him the automobile was ready. However, Baker could not come after the automobile, so appellant undertook to deliver it. He made arrangements with a taxi driver named Barker to follow him so that he would have transportation back to his shop. On the way to deliver the automobile he had an accident with an automobile driven by Mr. Moehle. He agreed to follow Mr. Moehle to a garage, but lost him in the traffic. He then drove to 1922 Carr Street where he met Baker. The repair bill was $12, but Baker did not have the correct change, so he and appellant started to drive "to the corner" for some change. It was on this trip, and while Baker was driving, that the accident occurred with the mail truck. The taxi driver did not testify, and appellant stated that he had not seen Baker since the accident.

■ There was substantial evidence that appellant was driving, operating and using the 1954 green Pontiac sedan at the time of the second accident; that Eugene Walker was the owner thereof; and that defendant did not have the permission of the owner to drive, operate or use the automobile. Therefore, there was substantial evidence of each and every element of the offense of which appellant was charged. See Section 560.175. It was for the jury to determine whether appellant's version or the state's version should be believed. The trial court correctly denied appellant's motion for judgment of acquittal at the close of the entire case.

Defendant contends that the trial court erred in permitting "the passing among the jury of pictures of a man, with prison numbers on said pictures, as no proper foundation was laid to show said pictures were properly authenticated by any court or clerk of any court, or custodian of any prison records, to be a picture of the defendant." In connection with its proof of the prior conviction of appellant of a felony, the state offered in evidence an exhibit consisting of certain records pertaining to the imprisonment of appellant in the United States penitentiary at Terre Haute, Indiana, to which was attached a picture. The trial court ruled that some of the information contained in the exhibit was not admissible and instructed the assistant circuit attorney to read to the jury only those matters which had been held admissible. This was done. The record then reveals the following occurrences:

"Mr. McLaughlin: Your Honor, may I pass this amongst the jury to view the picture?

"Mr. Godfrey: Just a moment.

"(The following proceedings were had out of the hearing of the jury).

"Mr. Godfrey: Your Honor, I am going to make objection to the passing * * *

"The Court: That is the fourth time. Let's go.

"Mr. Godfrey: * * * to the passing of all the records when the only thing that your Honor has sustained was the picture. After all, this is certainly inadmissible material passed to the jury, prejudicial to the defendant.

"The Court: Pardon me. Part of the records are the fingerprints. They are not to look at the fingerprints, but to aid the jury in determining if it is the same defendant you may pass the pictures. I have instructed the jury not to look at the papers. It is merely for the purpose of iden-

tification. If you want him to remove that picture, I will do that.

"Mr. Godfrey: That is what I want, your Honor.

"The Court: All right.

"(Thereupon, the Court removed the picture from the exhibit.)

"The Court: You may make the statement to the jury that this is the picture which has just been removed from the records sent from the Terre Haute Penitentiary.

"(The following proceedings were had within the hearing of the jury.)

"Mr. McLaughlin: At this time I would like to pass to the jury the picture that has just been removed from the particular records which I have been reading concerning this defendant in the federal penitentiary."

■ Reference is made in the assignment of error and in the above quoted remarks to "pictures" but it appears that there was only one picture involved, and that it was attached to the exhibit comprising properly authenticated records from the Federal penitentiary pertaining to appellant. Appellant did not object to the picture being shown to the jury for the reason assigned in the motion for new trial. Also the picture was shown to the jury in a manner expressly approved by him. This assignment of error is not supported by the record.

■ The information on which the state went to trial contained the name of the appellant as "Edward Edmondson." Appellant testified that his name was "Edward Harrison Edmonson." At the end of all the evidence the trial court permitted the assistant circuit attorney to amend the information so that in "all places where the name Edmondson appears said name shall read Edmonson." No objection was made to this amendment and we see no reason why it was not proper under the circumstances. 42 V.A.M.S. Supreme Court Rule 24.02.

■ Appellant does not now contend that the amendment of the information was error, but he contends that the trial court erred in permitting the introduction in evidence of documents to show prior convictions of a person named Edward Edmonson when at the time the evidence was offered and admitted the information showed the name of the defendant to be Edward Edmondson. This assignment of error is of no merit. Appellant did not object to the admission of the evidence of the prior convictions on the ground that the name therein contained was not spelled the same as his name appeared at that time in the information, and the error in the spelling of appellant's name was corrected subsequently without objection. The jury could not have been misled. In addition, appellant testified that "all of the charges that were read off to the jury and to the court against me yesterday, I were guilty of those charges and I pleaded guilty to those charges."

Appellant next contends that he has newly discovered evidence in that the "records of Homer G. Phillips Hospital do not indicate that defendant made a statement to a police officer at the time testified to by the police officer," and also that the same records indicate that at the time it is contended that he did make a statement to the police officer, he "was physically unable" to do so.

A police officer testified for the state that appellant was rendered unconscious as a result of the accident with the mail truck, and that he rode in a police car with appellant to the hospital. He also testified that appellant was still unconscious when they arrived at the hospital, but that about two hours later after he had regained consciousness appellant told him (the police officer) that he was driving the Pontiac automobile when it was involved in the accident with the mail truck.

■■ The allegations in the unverified motion for new trial do not prove themselves. State v. Brewer, Mo.Sup., 286 S.W. 2d 782 [6]; State v. Burks, Mo.Sup., 257 S.W.2d 919 [5]. But, assuming all of the

information referred to and contained in the hospital records would have been material, those records were in existence and available before and during the trial, and appellant made no request during the trial that the records of the hospital be brought in. The police officer testified on the first day of the trial. One witness for the state and the defendant testified on the second day. Therefore, appellant was aware of the testimony of the police officer in sufficient time to have requested the records without causing any delay in the trial. There is no attempt to show a justifiable excuse for not seeking this evidence in time for use on the second day of the trial. Under these circumstances the trial court did not abuse its discretion in denying the request for a new trial when there was no showing of diligence on the part of appellant to obtain the evidence. State v. Taylor, 356 Mo. 1216, 205 S.W.2d 734 [16].

■ The next two assignments of error are that "The court erred in giving to the jury instructions numbered 1, 2, 3, 4, 5 and 6," and "The verdict of the jury was against the weight of the evidence." These assignments merely state conclusions and neither specifies the error complained of. Such assignments have repeatedly been held to be insufficient to preserve anything for review. As to the first assignment, see State v. Henderson, 356 Mo. 1072, 204 S.W.2d 774 [2] and State v. January, 353 Mo. 324, 182 S.W.2d 323 [9]. As to the second assignment, see State v. Sheard, Mo.Sup., 276 S.W.2d 191 [2] and State v. Rohman, Mo. Sup., 261 S.W.2d 69 [2].

■ The last assignment of error is that "The verdict of the jury was such as to constitute cruel and unusual punishment." The maximum punishment authorized by Section 560.180 for conviction of the offense charged was five years imprisonment. This was the punishment imposed by the jury. However, the jury expressly found that appellant had previously been convicted of a felony and that he had been discharged from the sentence imposed prior

to the commission of the offense for which he was charged (the state proved that the appellant had previously been convicted of six separate felonies) within the meaning of Section 556.280, and therefore, the mandatory punishment under the circumstances was that which was imposed. State v. Breeden, Mo.Sup., 180 S.W.2d 684 [10]; State v. English, 308 Mo. 695, 274 S.W. 470 [13]; State v. Gaines, Mo.Sup., 261 S. W.2d 119 [6]; State v. O'Brien, Mo.Sup., 249 S.W.2d 433 [8], certiorari denied 344 U. S. 859, 73 S.Ct. 100, 97 L.Ed. 667. Fixing the limits of the punishment for crime is a legislative and not a judicial function. State v. Nord, Mo.Sup., 286 S.W.2d 775 [2]. In addition to the fact that an assignment worded as the one in this case has been stated to be insufficient to present anything for review, State v. Burnett, 365 Mo. 1060, 293 S.W.2d 335, 344, it is obvious that the punishment that was imposed does not violate the constitutional prohibition against the infliction of cruel and unusual punishment. State v. Nord, supra.

We have examined the record and find no error in regard to matters not required to be preserved in the motion for new trial. The information properly charges the appellant with the offense of tampering, driving and operating an automobile without the consent of the owner within the meaning of Section 560.175. The verdict is in proper form. Appellant was granted allocution, and the sentence and judgment are responsive to the verdict.

The judgment is affirmed, and the sentence pronounced shall be executed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

STORCKMAN, P. J., EAGER, J., and HUNTER, Special Judge, concur.

LEEDY, J., not sitting.